NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2088
_____

MARIA PEREZ,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 11-cv-01837)
District Judge: Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
March 22, 2013
_____

Before: McKEE, *Chief Judge*, and SMITH, GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed:  March 27, 2013)
_____

OPINION OF THE COURT
_____

GREENAWAY, JR., *Circuit Judge*.

    Maria Perez ("Appellant") appeals the decision of the District Court affirming the

Commissioner of Social Security's (the "Commissioner's") determination that Appellant

is not entitled to disability benefits under Title II the Social Security Act (the "Act"). For the following reasons, we will affirm the District Court's Order.

## I.      BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

On August 20, 2007, Appellant applied for Social Security disability insurance benefits, alleging disability based on glaucoma, psoriasis, arthritis, and irritable bowel syndrome. She claimed that she became disabled on January 31, 1987. Appellant's claim was denied upon initial review, and again upon reconsideration. Appellant then requested a hearing, which was held on October 2, 2009, before an Administrative Law Judge ("ALJ"). The ALJ issued a decision on October 14, 2009, denying Appellant's claim. The ALJ determined that based on Appellant's earnings records, she was last insured on June 30, 1988, and that therefore, to claim disability insurance benefits, she was required to show that she became disabled before that date. Because she was not able to show that she became disabled before June 30, 1988, he denied her claim.

Appellant sought review of the decision before the Appeals Council. That request was denied, making the ALJ's decision the final decision of the Commissioner. Appellant then filed a complaint in the United States District Court for the District of New Jersey, seeking review of the Commissioner's decision. On February 14, 2012, the District Court affirmed the Commissioner's decision denying Appellant's claim. Appellant filed a timely notice of appeal.

2

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's Order, but review the Commissioner's decision to determine whether it is supported by substantial evidence. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). Substantial evidence has been defined to mean "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla of evidence, but may be less than a preponderance." *Id.*

## III. ANALYSIS

Appellant presents two issues on appeal. She claims that the ALJ's denial of her claim at "step two" of the analytic framework set out in 20 C.F.R. § 404.1520 is not supported by substantial evidence. She also claims that the ALJ erred by failing to obtain testimony from a medical expert regarding the onset of Appellants' disability, pursuant to Social Security Ruling 83-20 ("SSR 83-20").

An individual is "disabled" under the meaning of the Act if she can show that "there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Newell*, 347 F.3d at 545 (internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(1)(A). In determining if an individual is disabled, and therefore eligible for benefits, the Commissioner is instructed to follow a five-step sequential analysis, codified at 20 C.F.R.

3

§ 404.1520.  *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

Under this framework, the Commissioner inquires whether the applicant: (1) is engaged in a substantial gainful activity; (2) has a "severe" medical impairment; (3) suffers from an impairment that is listed in the regulation's appendix; (4) can still perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy.  *See id.* (citing 20 C.F.R. § 404.1520).

However, under 42 U.S.C. § 423(a)(1)(A) and (c)(1), an individual is only eligible to receive disability insurance benefits if she was insured under the Act at the time of the onset of her disability.  S*ee also* 20 C.F.R. §§ 404.130, 404.315(a); *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985).  Here, the onset date of Appellant's disability is critical because it is determinative of whether she is entitled to benefits at all.  *See* SSR 83-20, 1983 WL 31249, at *1 (1983).  The ALJ determined, and the parties do not dispute, that based on Appellant's work history, the date when she was last insured was June 30, 1988.  Therefore, to be entitled to disability benefits, Appellant was required to show that became disabled before this date.  The ALJ found at step two of the five step sequential analysis that Appellant's impairment was not "severe" prior to 1988.  An impairment is not severe if it "does not significantly limit [the applicant's] physical or mental ability to do basic work activities. "  20 C.F.R. § 404.1521(a).  We agree with the District Court that substantial evidence exists upon this record to support the ALJ's conclusion that Appellant did not suffer from a disability before June 30, 1988.

Appellant claims that she became disabled on January 31, 1987.[1] In support of this contention, she has provided detailed medical records of her ongoing treatment for psoriasis and other medical ailments, including records showing that she was first diagnosed with psoriasis in 1985. However, her medical records show that she began receiving treatment for the psoriasis in 1991 or 1992, three to four years after the date on which she was last insured. Although Appellant may have been diagnosed with psoriasis prior to 1988, she has not provided any evidence to demonstrate that the condition significantly limited her ability to do basic work activities in 1987 or 1988. *See* 20 CFR § 404.1520(c). Appellant has not claimed that she was treated for the psoriasis between 1985 and 1991, nor has she argued that she was prevented from seeking treatment during this period. *Cf. Newell*, 347 F.3d at 547-48 (explaining that where an individual provides a reason for failing to seek treatment, the ALJ should not infer that no disability existed based on the lack of medical records).[2]

---

[1] Appellant claims that psoriasis limited her ability to work in 1987 and 1988, and does not allege that any of the other conditions from which she now suffers were present at that time.

[2] We recognize that SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996), states that

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

However, as discussed above, Appellant provides no explanation for failing to seek treatment during the relevant time period, and no other information in the record suggests a reason for irregular medical visits. To the contrary, the record suggests that Appellant has regularly sought medical treatment for her psoriasis when she has needed it.

Moreover, as the District Court noted, Appellant has otherwise maintained detailed medical records, and her records show that she saw a doctor in 1988 for an issue unrelated to her psoriasis. Absent a "medically determinable physical or mental impairment," an individual must be found not disabled at step two and "[n]o symptom or combination of symptoms can be the basis for a finding of disability . . . unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996).

Appellant's treating doctors' opinions fail to help her establish that she suffered from a disability in 1987 or 1988. The doctor who treated Appellant for psoriasis between 1991 and 1995 could not provide an opinion as to Appellant's ability to perform work activities. Although a physician who examined Appellant in 2007 opined that she could no longer work full time, no evidence in the record suggests that she was in this condition in 1987 and 1988.[3] This is not a case where the ALJ ignored conflicting medical evidence, or ignored a claimaint's subjective complaints of pain in the face of contrary medical evidence. *Cf. McCrea*, 370 F.3d at 361 (noting that ALJ erred by denying claim in part because the claimant's "statements regarding the nature and extent of her pain were supported by objective medical evidence," which included several MRIs, X-Rays, and doctors' opinions); *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir.

---

[3] Although Appellant's doctor wrote in 2007 that the date of onset of her psoriasis was "20 years ago," (Tr. 249), this statement does not speak to the severity of the psoriasis in 1987, and adds nothing to the record evidence, as her medical records indicate that she was diagnosed in 1985.

6

2001) (explaining that ALJ cannot disregard medical evidence in the record and draw an inference from the record having no medical support).

For all these reasons, we find that substantial evidence supports the ALJ's determination that Appellant failed to demonstrate that she suffered from a disability before June 30, 1988.[4]

We also agree with the District Court that the ALJ was not required under SSR 83-20 to call a medical expert to assist in determining the date of onset of Appellant's disability. SSR 83-20 states that "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20, 1983 WL 31249, at *1. The "onset date of disability" is defined as "the first day an individual is disabled as defined in the Act and the regulations." *Id.* The factors which the ALJ must consider in making this determination include the individual's allegation, work history, and the medical evidence in the record. *Id.* "However, the individual's

---

[4] We note that the District Court determined that the ALJ erred by applying the incorrect legal standard to Appellant's claim at stage two of the analysis, but that this error was harmless. The burden on a claimant at step two is "de minimis" and at this stage, "an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea*, 370 F.3d at 360 (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)). Because of this minimal burden, we have stated that "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *Id.*

We agree with the District Court, however, that if the ALJ erred by not explicitly applying the de minimis standard at step two, such error was harmless because the record is devoid of evidence that Appellant suffered from any disability prior to June 30, 1988. *See* 28 U.S.C. § 2111 (instructing that we are to give judgment on the record "without regard to errors or defects which do not affect the substantial rights of the parties").

7

allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id.*

In arguing that the ALJ should have called a medical expert to determine the date of onset of disability, Appellant relies on the following language from SSR 83-20:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> . . . .
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.
> . . . .
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at *2-3. Here, however, the first recorded medical examination (conducted in 1985), predated Appellant's claimed date of onset of disability, which was January 1, 1987. We have generally applied SSR 83-20, and have required the ALJ to call a medical expert, where medical evidence from the relevant period is unavailable. Unlike the situations in

8

*Walton v. Halter*, 243 F.3d at 709-10, and *Newell v. Commissioner of Social Security*, 347 F.3d at 548-49, on which Appellant relies, there is no deficiency in the medical records here, and no allegation that the onset of disability occurred before Appellant was diagnosed with the condition. *See Newell*, 1347 F.3d at 549 n.7 ("In *Walton*, we held that the ALJ must call upon the services of a medical advisor in a situation where . . . adequate medical records for the most relevant period were not available."). To the contrary, the medical records for the relevant period are available and demonstrate that although Appellant was diagnosed with psoriasis in 1985, she did not receive any treatment for the condition until 1991, at the earliest.[5] Therefore, although Appellant may have had psoriasis prior to 1988, there is no evidence in the record to support an inference that the disease existed at a disabling level of severity prior to 1988.

Appellant has not offered any explanation for her lack of treatment, and has offered very little detail about the extent of her psoriasis in 1987 and 1988, other than conclusorily stating that it prevented her from working. The record here contains medical records from 1985, 1988, and 1991 onward. After review, a medical consultant determined that there was no evidence of any disability existing prior to 1988. Because the medical records do not support a conclusion that Appellant suffered from a disability in 1987 and 1988, the ALJ did not err by failing to call an expert.

---

[5] The medical records show that the same physician who ordered Appellant's tissue pathology in 1985, which indicated that the findings were "consistent with psoriasis," (Tr. 241), also treated Appellant from 1991 to 1995, when she first sought treatment for her psoriasis. Moreover, that doctor could formulate no opinion, based on his treatment of Appellant from 1991 to 1995, as to Appellant's ability to do work-related activities.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, we will affirm the District Court's Order.